**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**September 23, 2003**

**Charles R. Fulbruge III**
**Clerk**

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 02-60803

_____

BLAKE HOBSON and MASTER FINISHES, INC.,

Plaintiffs - Appellants,

v.

PAUL RAYMOND ROBINSON, JAMES ROBERT MCDANIELS,
JOE CHRESTMAN and JOHN CHRESTMAN,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Northern District of Mississippi
District Court No. 02-CV-94

_____

Before WIENER, CLEMENT, and PRADO, Circuit Judges.[1]

PRADO, Circuit Judge:

Appellants Blake Hobson and Master Finishes, Inc.
(collectively "Hobson") appeal the dismissal of their claims
against Appellees Paul Raymond Robinson ("Robinson"), James
Robert McDaniels ("McDaniels"), Joe Chrestman and John Chrestman
on the grounds that their state law claims for fraud,
misrepresentation and breach of contract, which were removed to

_____

[1]Pursuant to 5th Cir. R. 47.5, this Court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5th Cir. R.
47.5.4.

1

federal court, were preempted by the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1144(a). We affirm the dismissal as to John Chrestman for all claims and as to Robinson, McDaniels and Joe Chrestman for the breach of contract claims, but reverse and remand the dismissal of the fraud and misrepresentation claims against Robinson, McDaniels, and Joe Chrestman.

## Background and Nature of the Dispute

The following facts are as alleged by Hobson. Brett Hobson, Blake Hobson's brother, was employed by his brother's company, Master Finishes, Inc. ("Master Finishes"), a small business in Tupelo, Mississippi, and acted as the company's contact person for obtaining insurance coverage for Master Finishes's employees. Joe Chrestman, sales manager for Business Partners, Inc. ("Business Partners"), approached Master Finishes about health insurance and other benefits acting as an agent of Business Partners subject to the supervision and control of the owners of Business Partners, Paul Raymond and James McDaniels. Joe Chrestman advised Hobson that he could provide comparable health insurance coverage for Master Finishes at rates much lower than Master Finishes's current insurance plan with Blue Cross/Blue Shield. Joe Chrestman represented to Hobson that he was selling health insurance and never informed him that he was offering a self-funded ERISA plan that had little or no assets. Master

2

Finishes cancelled its Blue Cross/Blue Shield policy to purchase what it believed was health insurance from Chrestman and Business Partners. No insurance policy was ever procured.

Blake Hobson subsequently incurred approximately $15,000 in medical bills. He and other employees of Master Finishes attempted to make claims on the insurance policy. Hobson contacted John Chrestman concerning his claims, who consistently represented that someone from Business Partners would return his call regarding the policy. No payment was ever made and plaintiffs brought this suit.

Master Finishes and Hobson sued Robinson, McDaniels and Joe and John Chrestman for fraud, misrepresentation and breach of contract in Mississippi state court. Nine days after filing the state claims, the plaintiffs filed a separate action for unpaid benefits under ERISA in federal court. The defendants removed the state action to federal district court, asserting that the claims were preempted by ERISA. The defendants also moved for dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

The district court granted the motion to dismiss after determining ERISA preempted Hobson's state law claims for fraud, misrepresentation and breach of contract. Although the original complaint did not contain allegations of wrongful conduct on the part of John Chrestman, the plaintiffs sought to amend their complaint to allege that John Chrestman made misrepresentations

3

to Hobson in connection with Hobson's submitted claims and that John Chrestman failed to communicate with Hobson about those claims. The district court, however, found that the proposed amendments did not contain any claims that would not be preempted by ERISA, and denied the motion as moot. Accordingly, the district court dismissed the case in its entirety. The plaintiffs timely appealed.

**Jurisdiction and Standard of Review**

We have jurisdiction over this appeal as an appeal from a final judgment pursuant to section 1291 of title 28. The standard of review for an ERISA preemption is de novo. See Roark v. Humana, Inc., 307 F.3d 298, 305 (5th Cir. 2002).

**Whether ERISA Preempts Hobson's Claims**

Relying on Pilot Life Insurance Company v. Dedeaux, 481 U.S. 41, 57 (1987), the district court held that "state law claims for fraud and gross negligence dealing with an ERISA policy are an area of exclusive federal concern." Pilot Life involved state law claims for common law tort and contract actions asserting improper processing of a claim. Pilot Life, 481 U.S. at 43. We agree that under Pilot Life, all of Hobson's claims for breach of contract are preempted because those claims involve the interpretation of the ERISA policy. See Mem'l Hosp. Sys. v. Northbrook Life Ins. Co., 904 F.2d 236, 250 (5th Cir. 1990). Pilot Life is inapposite, however, to the claims for

4

fraud and misrepresentation because the underlying conduct occurred in the inducement of an ERISA policy, not in its administration.

ERISA's preemption clause states that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employer benefit plan." 29 U.S.C. § 1144(a) (expressly excepting two situations not applicable here). A state cause of action relates to an employee benefit plan whenever it has "a connection with or reference to such plan." Hubbard v. Blue Cross & Blue Shield Assoc., 42 F.3d 942, 945 (5th Cir. 1995)(citations omitted). Despite its broad construction of ERISA's supersedure language, the United States Supreme Court has indicated that it will not extend the "relate to" language to its outer limit.[2] In Shaw v. Delta Air Lines, Inc., the Supreme Court noted that "[s]ome state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." Shaw, 463 U.S. at 100 n.21. We must, therefore, determine whether a state law claim for fraud and misrepresentation "relates to" a plan and is thus encompassed in ERISA's preemptive sweep.

The Supreme Court has acknowledged the expansive scope of

---

[2] See Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enter., Inc., 793 F.2d 1456, 1465 (5th Cir. 1986) (citing Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 100 n.21 (1983)).

ERISA.[3]  Courts have noted, however, that "this observation

provides little aid in actually determining whether ERISA

supersedes state law."  Woodworker's Supply, 170 F.3d at 989

(citing N.Y. St. Conference of Blue Cross & Blue Shield v.

Traveler's Ins. Co., 514 U.S. 645, 655 (1995)).  The Supreme

Court suggests, however, "[w]e simply must go beyond the

unhelpful text and the frustrating difficulty of defining its key

term, and look instead to the objectives of the ERISA statute as

a guide to the scope of state law that Congress understood would

survive."  Traveler's Ins. Co., 514 U.S. at 656.

Congress enacted ERISA to "protect . . . the interests of

participants in employee benefits plans and their beneficiaries .

. . by establishing standards of conduct, responsibility, and

obligation for fiduciaries of employee benefit plans, and by

providing for appropriate remedies."  29 U.S.C. § 1001(b).  State

law preemption "affords employers the advantages of a uniform set

of regulations governing plan fiduciary responsibilities and

governing procedures for processing claims and paying benefits"[4]

to minimize "the administrative and financial burden of complying

with conflicting directives among states or between states and

---

[3]See Woodworker's Supply v. Principal Mutual Life Ins. Co.,
170 F.3d 985, 989 (10th Cir. 1999)(citing Ingersoll-Rand Co. v.
McClendon, 498 U.S. 133, 138-39 (1990)); Pilot Life Ins. v.
Dedeaux, 481 U.S. 41, 47 (1983)(citations omitted).

[4]Mem'l Hosp. Sys., 904 F.2d at 245; see Fort Halifax v.
Packaging Co. v. Coyne, 482 U.S. 1, 9-11 (1987).

the federal government."[5]

In determining whether a claim is preempted by ERISA, this Court applies a two-prong test; that is, this Court asks: 1) whether the claim addresses areas of exclusive federal concern and not of traditional state authority, such as the right to receive benefits under the terms of an ERISA plan, and (2) whether the claim directly affects the relationship among traditional ERISA entities – the employer, the plan and its fiduciaries,[6] and the participants and beneficiaries.[7] After considering these questions, we find Hobson's claims for fraud and misrepresentation against Robinson, McDaniels and Joe Chrestman are not preempted by ERISA.

The gravamen of Hobson's claims for fraud and

---

[5] Travelers Ins. Co., 514 U.S. at 656-57 (quoting Ingersoll-Rand Co., 498 U.S. at 142) (citations omitted).

[6] Congress defined a plan fiduciary as a person

(i) [who] exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) [who] renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) [who] has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).

[7] See Smith v. Tex. Children's Hosp., 84 F.3d 152, 155 (5th Cir. 1996); Hubbard, 42 F.3d at 945; Mem'l Hosp. Sys., 904 F.2d at 245.

7

misrepresentation arise from Joe Chrestman's alleged conduct inducing Hobson to give up Master Finishes's Blue Cross/Blue Shield plan and to procure a plan with Business Partners. In Hobson's proposed amended complaint, he imputes Joe Chrestman's conduct to Robinson and McDaniels.[8] Thus, if the claims against Joe Chrestman are not preempted, the claims against Robinson and McDaniels as Business Partners' principals also cannot be preempted at this stage. We agree, however, that the claims against John Chrestman, an employee of Business Partners with no alleged involvement in the fraudulent inducement claim, are preempted by ERISA. Thus, the primary legal question in this case is whether ERISA preempts Hobson's claims for fraudulently inducing him to surrender his insurance coverage in order to procure coverage from Business Partners.

Hobson argues that under Perkins v. Time Insurance Company, 898 F.2d 470 (5th Cir. 1990), Hobson's claims for fraud and

_____

[8]The proposed amended complaint states:

> The statements made by Joe Crestman [sic] that health insurance was being provided were authorized by the Defendants, Robinson and McDaniels, since they were principles [sic] of Business Partners, Inc. Robinson and McDaniels, as owners and principles [sic] in Business Partners, Inc., were in control of the affairs of Business Partners, Inc. and had the authority to control the activity of its agent. Upon information and belief, Robinson and McDaniels had actual knowledge that Crestman [sic] was making statements that insurance was being provided. Alternatively, if Robinson and McDaniels did not know that such statements were being made, they were guilty of gross negligence in failing to control the activities of Joe Crestman [sic].

8

misrepresentation do not relate to a particular ERISA plan, rather they relate to fraud in the procurement before the plan came into existence and thus are not preempted. In Perkins, we held that a state law claim for fraud in the procurement against an independent insurance agent was not preempted by ERISA. See Perkins, 898 F.2d at 473.[9] In the instant case, the district court distinguished Perkins in that the agent in Perkins was an independent agent while Joe Chrestman was an employee/and or agent of Business Partners and thus an ERISA fiduciary. In

---

[9]See also Woodworker's Supply, 170 F.3d at 991 (state law claim against former insurer for unfair trade practices and fraud resulting from pre-plan conduct are not preempted by ERISA because no plan fiduciary could exist before the plan existed); Wilson v. Zoellner, 114 F.3d 713, 721 (8th Cir. 1997)("[w]e hold that ERISA does not preempt [plaintiff's] suit against [an insurance agent] for the Missouri state common-law tort of negligent misrepresentation"); Coyne & Delany Co. v. Selman, 98 F.3d 1457, 1467 (4th Cir. 1996)(plaintiff's malpractice claim against insurance professional not preempted because it does not "relate to" an employee benefit plan within the meaning of ERISA's preemption provision); Morstein v. Nat'l Ins. Serv., Inc., 93 F.3d 715,723 (11th Cir. 1996)(ERISA does not preempt a fraudulent inducement claim against insurance agent, but would preempt against insurer if the claim regarded the scope of coverage); but see Hall v. Blue Cross/Blue Shield of Ala., 134 F.3d 1063, 1064-65 (11th Cir. 1998)(holding ERISA preempts a fraudulent inducement claim that an insurer and its licensed agent marketed and sold an insurance policy that allegedly differed from the plan the agents had proposed); Reliable Home Health Care, Inc. v. Union Cent. Ins. Co., 295 F.3d 505 (5th Cir. 2002)(ERISA preempts employer's fraudulent inducement claim that an insurance agent falsely represented an insurance company's expertise because the underlying conduct involved the creation, operation and subsequent failure of the plan which could not be severed from its connection to the plan); Elmore v. Cone Mills Corp., 23 F.3d 855, 863 (4th Cir. 1994)(ERISA preempts breach of fiduciary duty claim which seeks to enforce representations made regarding the establishment of an ESOP).

<u>Perkins</u>, however, the agent's status as an independent agent was not the dispositive factor in the analysis.  Rather, the critical determination was whether the claim itself created a relationship between the plaintiff and defendant that is so intertwined with an ERISA plan that it cannot be separated.[10]  Thus, the timing of plan formation is not the crucial factor in ERISA preemption.  Rather, the extent the claim itself relates to an ERISA plan guides our determination.

In <u>Perkins</u>, we relied in part on <u>Sommers Drug Stores Company</u>

_____

[10]In <u>Perkins</u>, we found:

> While ERISA clearly preempts Perkins' claims as they relate to Time, the same cannot necessarily be said, however, as regards Davis's solicitation of Perkins, which allegedly induced him to forfeit an insurance policy that covered his daughter's condition for one that did not.  While ERISA clearly preempts claims of bad faith as against insurance companies for improper processing of a claim for benefits under an employee benefit plan and while ERISA plans cannot be modified by oral representations, we are not persuaded that this logic should extend to immunize agents from personal liability for their solicitation of potential participants in an ERISA plan prior to its formation.  Giving the ERISA "relates to" preemption standard its common-sense meaning, we conclude that a claim that an insurance agent fraudulently induced an insured to surrender coverage under an existing policy, to participate in an ERISA plan which did not provide the promised coverage, "relates to" that plan only indirectly.  A state law claim of that genre, which does not affect the relations among the principal ERISA entities . . . as such, is not preempted by ERISA.

<u>Perkins</u>, 898 F.2d at 473 (internal citations omitted).

10

Employee Profit Sharing Trust v. Corrigan Enterprises, Inc.[11]  In

Sommers Drug Stores, we determined the plaintiff's claim for

common law breach of corporate fiduciary duty was not preempted

by ERISA, despite the fact that the corporate director was also a

plan fiduciary and that the plaintiffs were both shareholders and

plan beneficiaries.  See Sommers, 793 F.2d at 1468.  In other

words, the defendant corporate director was an ERISA fiduciary in

regards to some claims, but not in regards to others.[12]  The

critical determination was the relationship between the

---

[11]We also relied on Perry v. P.*I.*E.* Nationwide, Inc., 872
F.2d 157 (6th Cir. 1989) (state claims alleging fraudulent
inducement to participate in an ERISA plan are not preempted by
ERISA).

[12]In Sommers, we noted:

The state common law of fiduciary duty that the Trust
seeks to invoke in this case centers upon the relation
between corporate director and shareholder.  The
director's duty arises from his status as director; the
law imposes the duty upon him in that capacity only.
Similarly, the shareholder's rights against the
corporate director arise solely from his status as
shareholder.  That in a case such as ours the director
happens also to be a plan fiduciary and the shareholder
a benefit plan has nothing to do with the duty owed by
the director to the shareholder.  The state law and
ERISA duties are parallel but independent: as director,
the individual owes a duty, defined by state law, to
the corporation's shareholders, including the plan; as
fiduciary, the individual owes a duty, defined by
ERISA, to the plan and its beneficiaries.  Thus, the
state law does not affect relations between the ERISA
fiduciary and the plan or plan beneficiaries as such;
it affects them in their separate capacities as
corporate director and shareholder.

Sommers, 793 F.2d at 1468.

11

plaintiffs and defendants and what duty the law imposed upon that relationship. Thus, the fact that the agent in Perkins was an independent agent and not an employee of Time (the ERISA entity) simply bolsters the point that the duty imposed upon the relationship between Perkins and the agent did not derive from ERISA. The agent could never have been an ERISA entity and Time could never have been responsible for the agent's conduct because of the agent's independent status. If the agent in Time had been an employee of Time, then Time could have been liable for its agent's conduct.

Our decisions since Perkins have reaffirmed that the important factor in ERISA preemption is the relationship between the parties involved in the claim itself and whether that claim is intricately bound with an ERISA plan. For example, in Hubbard, the plaintiff brought state law claims against the Blue Cross & Blue Shield Association for both fraudulent inducement under the Texas Deceptive Trade Practices Act and for "secret coverage guidelines." Hubbard, 42 F.3d at 944. We held that a state law claim for "secret coverage guidelines" was preempted by ERISA because it required interpretation and administration of the plan, but that the claim for deceptive trade practices (fraudulent inducement) was not preempted. Id. at 946-47. Both claims were against the same entity, the Blue Cross & Blue Shield Association, yet both claims were not preempted. The critical factor was that the fraudulent inducement claim did not require

12

interpretation and administration of the ERISA policy as did the "secret coverage guidelines" claim. The ERISA policy defined the duty as between the entities for the "secret coverage guidelines claim," but not for the fraudulent inducement claim. Likewise, Hobson's claims for fraud and misrepresentation do not require interpretation or administration of the ERISA plan.

We reached a consistent determination in Smith v. Texas Children's Hospital. In Smith, Plaintiff Smith sued Texas Children's Hospital seeking damages for a state law claim of fraudulent-inducement and seeking disability benefits under an ERISA plan. See Smith, 84 F.3d at 155. Smith alleged Texas Children's promised her that if she relinquished her job and benefits at St. Lukes and came to work for Texas Children's, Texas Children's would offer her the same benefits. See Smith, 84 F.3d at 155. We held that Smith's state law claim for fraudulent inducement was not preempted by ERISA while her claim for disability benefits was preempted by ERISA.[13] See id.

_____

[13]Specifically, we found:

Though ERISA preempts Smith's claim seeking benefits under Texas Children's ERISA plan, she may have a separate claim based upon the benefits that she had at St. Luke's and relinquished by leaving. The difficulty here arises in that Texas Children's allegedly promised that Smith would have the same benefits at Texas Children's as she had at St. Luke's, so the measure of her injury is the same regardless of whether she pursues recovery of benefits relinquished or of benefits denied. . . . But, to the extent that Texas law permits a plaintiff asserting fraudulent-inducement to recover for value relinquished in addition to value

13

<u>Smith</u> confirms the law in this circuit that a state law claim for fraudulent inducement is not preempted by ERISA.[14]  As in <u>Smith</u>, Hobson's claims are based upon benefits given up for purposes of ERISA and thus are not preempted by ERISA.

These decisions demonstrate why Hobson's claims for fraud and misrepresentation fail both prongs of the preemption test. Joe Chrestman, like the agent in <u>Perkins</u> and Texas Children's Hospital in <u>Smith</u>, allegedly fraudulently induced Hobson to surrender his pre-existing insurance coverage in order to obtain an ERISA plan.  Joe Chrestman's underlying conduct relates only indirectly to the ERISA plan.  As such, the relationship between Hobson and Joe Chrestman derives from state common-law claims, not the ERISA plan.  Moreover, this conclusion does not contradict Congress's intent in enacting ERISA–the simplification of plan interpretation and administration–because Hobson's claims

---

not received, Smith may also have a claim based upon the disability benefits relinquished, separate from her claim for benefits under Texas Children's ERISA plan. The Texas state court can decide the grounds for relief available to Smith under Texas law; we need only decide whether ERISA preempts such a claim of recovery based upon the benefits that Smith gave up by leaving St. Luke's . . . . Such a claim escapes ERISA preemption because it does not necessarily depend upon the scope of Smith's rights under Texas Children's ERISA plan.

<u>Id</u>. at 155-56.

[14]<u>See</u> <u>Erwin v. U-Haul Int'l, Inc</u>., 2002 U.S. Dist. LEXIS 2937, *6-7 (N.D. Tex. Feb. 22, 2002)(holding that although a state law fraudulent inducement and misrepresentation claim against an employer "necessarily touches upon the existence of the ERISA plan, it is related to the plan only indirectly").

14

do not require either plan interpretation or administration.

## Conclusion

As a result, Hobson's state law claims for breach of contract and all claims against John Chrestman are preempted, and Hobson's state law claims for fraud and misrepresentation against Joe Chrestman, Robinson and McDaniels are not preempted. Consequently, we therefore AFFIRM the district court's entry of judgment in favor of defendant John Chrestman for all of Hobson's claims and of Joe Chrestman, Robinson and McDaniels for Hobson's breach of contract claims. We REVERSE the entry of judgment in favor or defendant Joe Chrestman, Robinson and McDaniels for Hobson's claims for fraud and misrepresentation. Accordingly, we REMAND this case for reconsideration of the plaintiffs' motion to amend their complaint in light of this Court's determination. AFFIRMED IN PART; REVERSED AND REMANDED IN PART.