Dr. Vibha VIG and Dr. Vibha Vig, M.D., P.A., Plaintiffs,

v.

INDIANAPOLIS LIFE INSURANCE CO., et al., Defendants.

Civ.A. No. 3:04CV824LN.

United States District Court, S.D. Mississippi, Jackson Division.

Dec. 6, 2005.

Cynthia H. Speetjens, Madison, MS, Craig Robert Sessums, Jones, Funderburg & Sessums, Jackson, MS, Jesse M. Harrington, Harrington Law Firm, PLLC, Madison, MS, John H. Daniels, III, Dyer, Dyer, Jones & Daniels, Greenville, MS, Judson Morgan Lee, Judson M. Lee, PLLC, Madison, MS, Thomas R. Frazer, II, Frazer & Davidson, P.A., Jackson, MS, for Plaintiffs.

David M. Skeens—PHV, J. Michael Vaughn—PHV, Walters, Bender, Strohbehn & Vaughn, PC, Kansas City, MO, Jimmy Fred Spencer, Jr., William F. Ray, Watkins & Eager, Damany Freeman Ransom, Phelps Dunbar, Jackson, MS, Eddie J. Abdeen, Eddie J. Abdeen, Attorney, Madison, MS, Jeffrey P. Hubbard, Wells, Moore, Simmons & Hubbard, Jackson, MS, for Defendants.

## MEMORANDUM OPINION
## AND ORDER

LEE, District J.

This cause is before the court on the motion of plaintiffs Dr. Vibha Vig and Dr. Vibha Vig, M.D., P.A., to remand. Defendants Indianapolis Life Insurance Company (Indianapolis Life) and Donald Guess have separately responded in opposition to the motion and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that the motion is well taken and should be granted.

Plaintiffs brought the action in the Circuit Court of Hinds County on August 19, 2004 seeking to recover damages based on alleged false and fraudulent misrepresentations which led them to invest $150,000 in what they now describe as a "bogus tax shelter plan known as the Xelan 419 Welfare Benefit Trust (hereinafter 'the Plan')." Plaintiffs assert that defendants promoted the Plan as a legitimate welfare benefit

fund under 26 U.S.C. § 419(e)(1) and hence a viable tax shelter investment[1] when in fact it did not so qualify and was instead an improper tax-avoidance scheme. According to plaintiffs, once IRS regulations took effect which imposed strict disclosure requirements relating to participation in all putative § 419 plans so that it was no longer possible for defendants to hide the fact that the Plan was an illegitimate tax-avoidance device, defendants terminated the Plan, causing plaintiffs to lose their entire $143,000 investment, and to become subject to paying taxes, interest and penalties to the IRS. In this action, they seek recovery for the loss of their investment, and probable tax liabilities. Plaintiffs have not sued the Plan itself, which is currently in bankruptcy, but have named as defendants L. Donald Guess, who is identified as the chairman, founder and trustee for the Xelan Welfare Benefit Trust/Plan; Indianapolis Life, which participated in marketing the Plan and provided the insurance policy which funded the Plan; Steve Spencer, identified as an "independent contractor" for the Xelan Trust and as agent for Indianapolis Life, who solicited plaintiffs' investment in the Plan; and Michael E. Lloyd, individually and agent for Williams Coulson, Williams Coulson attorneys at law, which, on behalf of the other defendants, provided to plaintiffs a legal opinion that the Plan was a welfare benefit plan within the meaning of § 419.

On October 7, 2004, defendants removed the case, both pursuant to 28 U.S.C. § 1446, on the basis that the court has federal question jurisdiction under 28 U.S.C. § 1331 because plaintiffs' claims are preempted by the Employee Retirement Income Security Act, 29 U.S.C. § 1000 *et seq.* (ERISA), and pursuant to 29 U.S.C. § 1452, on the basis that the court has bankruptcy jurisdiction under 28 U.S.C. § 1334 in view of the bankruptcy of Xelan Welfare Benefit Trust. Plaintiffs had now moved to remand, insisting that ERISA does not preempt their claims so that there is no federal question jurisdiction, and asserting that there is no basis for exercising bankruptcy jurisdiction but that even if there were, the court may not or should not exercise such jurisdiction. For the reasons that follow, the court concludes that plaintiffs are correct on both counts, and accordingly, the case will be remanded.

 The plain language of ERISA provides that it shall preempt state laws that "relate to any employment benefit plan," subject to enumerated exceptions. *See* 29 U.S.C. § 1144(a). A state cause of action relates to an employee benefit plan whenever it has "a connection with or reference to such plan." *Hubbard v. Blue Cross & Blue Shield Assoc.*, 42 F.3d 942, 945 (5th Cir.1995) (citations omitted). Although the scope of ERISA preemption is "clearly expansive," *New York State Conference of Blue Cross & Blue Shield v. Travelers Ins. Co.*, 514 U.S. 645, 655, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995), it is not limitless, *Smith v. Texas Children's Hosp.*, 84 F.3d 152, 155 (5th Cir.1996). "[S]ome state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Shaw v. Delta Air Lines*, 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983). Where the line is to be drawn, however, is not always clear. As the Court noted in *Travelers:*

> [O]ne might be excused for wondering, at first blush, whether the words of limi-

---

**1.** 26 U.S.C. § 419(e)(1) defines a "welfare benefit fund" as any fund that is part of a plan of an employer, and through which the employer provides welfare benefits to its employees or their beneficiaries.

tation ... do much limiting. If "relate to" were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes pre-emption would never run its course, for "[r]eally, universally, relations stop nowhere," H. James Roderick Hudson xli (New York ed., World Classic's 1980) .... That said, we have to recognize that our prior attempt to construe "relate to" does not give us much help in drawing the line here.

*Travelers Ins. Co.*, 514 U.S. at 655, 115 S.Ct. 1671, 131 L.Ed.2d 695. Thus, wrote the Court, "We simply must go beyond the unhelpful text and the frustrating difficulty of defining its key term, and look instead to the objectives of ERISA as a guide to the scope of state law that Congress understood would survive." *Id.* at 656, 514 U.S. 645, 115 S.Ct. 1671, 131 L.Ed.2d 695. That objective is to "protect ... the interests of participants in employee benefits plans and their beneficiaries ... by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies." 29 U.S.C. § 1001(b). In light of these objectives, the Fifth Circuit has directed application of a two-prong test to determine whether a claim is preempted by ERISA, which asks: "(1) whether the claim addresses areas of exclusive federal concern and not of traditional state authority, such as the right to receive benefits under the terms of an ERISA plan, and (2) whether the claim directly affects the relationship among traditional ERISA entities—the employer, the plan and its fiduciaries, and the participants and beneficiaries." *Hobson v. Robinson*, 75 Fed.Appx. 949, 953 (5th Cir.2003).

■ In this case, plaintiffs have asserted a variety of legal theories in support of their claim for recovery, including claims for breach of the duty of good faith and fair dealing, tortious interference with contract and business relations, indemnification, misrepresentation and concealment, breach of contract, fraudulent inducement, gross negligence and breach of public policy and interference with regulatory authority. Each of those claims, though, is grounded on plaintiffs' singular charge that defendants misrepresented (whether negligently, or more likely, intentionally) that the Xelan Plan was a legitimate welfare benefit plan under § 419, contributions to which were fully tax deductible, when in fact, and as defendants well knew (or should have known), the Plan was a tax-avoidance scheme. Moreover, it appears that plaintiffs do not seek to recover benefits under the Plan, which provides for death benefits, severance benefits and health care benefits; rather they seek to recover the loss of their investment in the Plan (including the return on that investment).

Although plaintiffs do include a count in their complaint for breach of contract, a fair interpretation of their allegations in support of that count belies defendants' suggestion that plaintiffs are suing under the Plan for any breach of its terms. Rather, the breach of contract to which the complaint refers is defendants' alleged failure to provide plaintiffs with "a legal and viable financial plan as Defendants promised and were compensated to do," and their "not advising [Plaintiffs] honestly about the viability of the Xelan WBT that Defendants promoted and sold to Plaintiffs...." In other words, defendants are not alleged to have breached their duties under the Plan but rather their agreement/promise to invest plaintiffs' funds in a legitimate welfare benefit plan.

The essence of plaintiffs' claims against all the defendants is negligent and/or fraudulent misrepresentation and/or pro-

fessional malpractice based on false and/or fraudulent representations to plaintiffs regarding the tax consequences of utilizing the Plan-which plaintiffs acknowledge is a welfare benefit plan under ERISA—as an investment tool. The claims relate exclusively to defendants' activities in marketing and promoting the plan as a legitimate tax shelter. In the court's opinion, to the extent these claims are asserted against Spencer, Lloyd and Williams Coulson, none of whom is a fiduciary with respect to the Plan, no reasonable argument exists that plaintiffs' claims are preempted. This is so not only because plaintiffs' claims relate to these defendants' alleged activities predating the Plan, but also because as they are non-fiduciaries, plaintiffs' claims against them do not "directly affect the relationship among traditional ERISA entities." *See Hobson,* 75 Fed.Appx. at 953 (5th Cir.2003) (holding that where the plaintiff alleged that insurer's employee fraudulently induced him to surrender his pre-existing insurance coverage in order to obtain an ERISA plan, the employee's "underlying conduct relates only indirectly to the ERISA plan[,] [and] [a]s such, the relationship between [the insured] and [the insurer's employee] derives from state common-law claims, not the ERISA plan"); *Perkins v. Time Ins. Co.,* 898 F.2d 470, 473–74 (5th Cir.1990) (holding that "a claim that an insurance agent fraudulently induced an insured to surrender coverage under an existing policy, to participate in an ERISA plan which did not provide the promised coverage, 'relates to' that plan only indirectly. A state law claim of that genre, which does not affect the relations among the principal ERISA entities (the employer, the plan fiduciaries, the plan, and the beneficiaries) as such, is not preempted by ERISA.").

Defendants implicitly recognize that their best argument for preemption is based on plaintiffs' claims against Indianapolis Life and Guess (in his capacity as trustee), because these defendants, unlike the others, were Plan fiduciaries. In the court's opinion, however, that distinction here is immaterial. It is true as to these defendants, as with the others, that plaintiffs' claims against these defendants relate to their alleged fraudulent inducement prior to the formation of a plan, and hence relate to activities at a time when there were *not* Plan fiduciaries. *See Woodworker's Supply, Inc. v. Principal Mutual Life Ins. Co.,* 170 F.3d 985, 991 (10th Cir.1999) (employer's claim against insurer for misrepresentation and fraudulent inducement based on its having set initial premiums at artificially low rate and having failed to disclose pertinent information regarding calculation of premiums, all of which increased the likelihood of large rate increases, was *not* preempted by ERISA because the employer was "suing [the insurer] with respect to its pre-plan activity in its role as a seller of insurance, not as an administrator of an employee benefits plan...."); *see also American Fed. of Unions Local–102 Health & Welfare Fund v. Equitable Life Assur. Soc. of the U.S.,* 841 F.2d 658, 664 (5th Cir.1988) (holding that "[s]imply urging the purchase of its products does not make an insurance company an ERISA fiduciary with respect to those products.").[2] The court therefore con-

---

**2.** Congress defined a plan fiduciary as a person

 (i) [who] exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii)[who]

renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii)[who] has any discretionary authority or discretionary responsibility in the administration of such plan.

cludes that removal is not proper on the basis of ERISA preemption.

Defendants removed the case on the additional basis that this case is "related to" the Xelan bankruptcy in light of an indemnity provision in the Agency Agreement between Indianapolis Life and Xelan Insurance providing that Xelan will indemnify and hold Indianapolis Life harmless from any claims brought against it based upon any unauthorized or negligent act or omission or any wrongful or tortious conduct of the General Agent (Xelan Insurance), its employees (Guess), and its agents/producers (Spencer). Defendants submit that even though Xelan is not directly named as a party in this case (owing to the automatic stay which arose when Xelan's Chapter 11 bankruptcy petition was filed), nevertheless, because of the referenced indemnity agreement, this case is at the very least "related to" the Xelan bankruptcy because any judgment in this case will bind Xelan and increase the claims against Xelan in its bankruptcy. In this vein, they note that although none of the defendants herein has yet asserted a direct claim for indemnity against Xelan in this action, Indianapolis Life has filed a proof of claim in the Xelan bankruptcy based on its claimed right to indemnity for any liability in this case.

■ Pursuant to 28 U.S.C. § 1334(b), "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." A proceeding is "related to" a bankruptcy if the outcome of that proceeding could conceivably affect the estate being administered in bankruptcy. *In re Wood,* 825 F.2d 90, 93 (5th Cir.1987). If the outcome of the proceeding could "alter the debtor's rights, liabilities, options or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate," the proceeding is deemed to be related to a bankruptcy. *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984); *In re Walker,* 51 F.3d 562, 569 (5th Cir. 1995). Even when "related to" jurisdiction exists, however, the court must determine whether mandatory or discretionary abstention is in order in accordance with 28 U.S.C. § 1334(c)(2), which provides for mandatory abstention, § 1334(c)(1), which provides for discretionary abstention[3] or 28 U.S.C. § 1452(b), which allows the court, on any equitable ground, to remand a claim related to a bankruptcy case which has been removed to federal court.

It might well be reasonable to conclude in this case that the claims against India-

29 U.S.C. § 1002(21)(A). Defendants point to subpart (ii), and suggest that because plaintiffs' allegations against defendants relate to their having given investment advice, then they qualify as Plan fiduciaries "to the extent" that they gave such advice. However, subsection (ii) refers to advice regarding investment of Plan money or property. At the time of the alleged faulty investment "advice" or information to plaintiffs, the Plan was not yet in existence and the advice related to an investment to benefit these plaintiffs individually.

3. These provisions state:
 (c)(1) Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or

respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.
(2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

napolis Life are "related to" the Xelan bankruptcy in view of the indemnity agreement between Indianapolis Life and Xelan and the proof of claim filed by Indianapolis Life in Xelan's bankruptcy case. Indeed, courts have often found "related to" jurisdiction over claims of nondebtors where the nondebtors had a contractual right of indemnification from a debtor. *See, e.g., Davis v. Life Investors Ins. Co. of America,* 282 B.R. 186, 190 (S.D.Miss.2002); *but see Retirement Systems of Alabama v. J.P. Morgan Chase & Co.,* 285 B.R. 519, 529 (M.D.Ala.2002) ("Where a lawsuit's potential effect on a bankruptcy estate is 'speculative and premature,' then such a case fails to warrant federal bankruptcy 'related to' jurisdiction."). However, even assuming that this court does have "related to" jurisdiction over plaintiffs' claims against Indianapolis Life, nevertheless, the court concludes that it should abstain and remand.

 As this court summarized in *Davis,* pursuant to § 1334(c)(2), "in 'non-core' proceedings, courts are required to abstain from hearing a state law claim for which there is no independent basis for federal jurisdiction other than § 1334(b) 'if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.'" *Id.* (quoting *In re Gober,* 100 F.3d 1195, 1206 (5th Cir.1996)). "But even when mandatory abstention does not apply, the court has the discretion to abstain from deciding either core or non-core proceedings under § 1334(c)(1) if the interests of justice, comity, or respect for state law so require." *Id.* Similarly, 28 U.S.C. § 1452(b) permits a federal district court, on any equitable ground, to remand a claim related to a bankruptcy case which has been removed to federal court. *Id.*

 Defendants insist that the requirements for mandatory abstention are lacking here, inasmuch as this is a core pro-

ceeding, there was no timely request for abstention, the plaintiffs' claims are not state law claims but rather are preempted by ERISA and because there has been no showing that this case could be timely adjudicated in state court. The court agrees that mandatory abstention does not apply, but for only one of the reasons submitted by defendants, which is, the plaintiffs did not file a timely request for abstention, for more than ten months passed between the date of removal and the date plaintiffs finally moved to remand. The court concludes, though, that discretionary abstention and/or equitable remand is warranted.

Factors the court typically should consider when presented with questions of discretionary abstention and/or equitable remand include, *inter alia,*

(1) the effect or lack thereof on the efficient administration of the estate if the Court recommends [remand or] abstention;

(2) extent to which state law issues predominate over bankruptcy issues;

(3) difficult or unsettled nature of applicable law;

(4) presence of related proceeding commenced in state court or other nonbankruptcy proceeding;

(5) jurisdictional basis, if any, other than § 1334;

(6) degree of relatedness or remoteness of proceeding to main bankruptcy case;

(7) the substance rather than the form of an asserted core proceeding;

(8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

(9) the burden of the bankruptcy court's docket;

(10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;

(11) the existence of a right to a jury trial;

(12) the presence in the proceeding of nondebtor parties;

(13) comity; and

(14) the possibility of prejudice to other parties in the action.

*Searcy v. Knostman,* 155 B.R. 699, 710 (S.D.Miss.1993).

A decision by this court to abstain and remand should have no effect on the efficient administration of the Xelan bankruptcy estate. Although Indianapolis Life claims a right to indemnity from Xelan, this case does not include a claim for indemnity. Thus, the only "effect" of this case will be to establish whether Indianapolis Life has any liability for which a claim for indemnity may then exist. Moreover, contrary to defendants' urging, it is hardly apparent that the referenced indemnity agreement entitles Indianapolis Life to "unconditional, absolute indemnity from the debtor." That is, it appears to the court that there exists only the possibility that Indianapolis Life, if held liable in this proceeding, may have a claim for indemnity against Xelan; but that claim for indemnity would have to be brought and litigated. This case, which includes only nondebtor parties, is thus only remotely related to the bankruptcy case.

Furthermore, as this court has rejected defendants' argument that ERISA provides a basis for federal jurisdiction, it follows that § 1334 is the sole jurisdictional basis for this case. It is apparent, as well, that state law issues predominate over any possible bankruptcy issues. Finally, the court observes that plaintiffs would be entitled to a jury trial of their claims.

In sum, the reasons for abstaining and remanding the case far outweigh any arguable basis for retaining jurisdiction over the case on the basis of bankruptcy jurisdiction. Because of this, and the court's previous conclusion that ERISA preemption does not extend to the claims herein, it follows that the case should be remanded to state court.

Accordingly, it is ordered that plaintiffs' motion to remand is granted.