**NORTHERN KARE FACILITIES/KINGDOM KARE, LLC, Plaintiff,**

v.

**BENEFIRST, LLC, Intermediary Insurance Services, Inc., and the MEGA Life and Health Insurance Company, Defendants.**

**No. CIV.A.03–12112–JLT.**

United States District Court, D. Massachusetts.

Nov. 1, 2004.

Richard B. Kirby, Keegan, Werlin & Pabian, LLP, Boston, MA, for Northern Kare Facilities/Kingdom Kare, LLC, Plaintiff.

Matthew E. Mitchell, Keegan, Werlin & Pabian, LLP, Boston, MA, for Northern Kare Facilities/Kingdom Kare, LLC, Plaintiff.

Richard J. Poliferno, Long and Houlden, Boston, MA, for BenefiRST, LLC, Defendant.

Stephen A. Roach, Roach & Wise, LLP, Boston, MA, for The MEGA Life and Health Insurance Company, Intermediary Insurance Services, Inc., Defendants.

Matthew P. Zayotti, Keegan, Werlin & Pabian, LLP, Boston, MA, for Northern Kare Facilities/Kingdom Kare, LLC, Plaintiff.

## *MEMORANDUM*

TAURO, District Judge.

Plaintiff Northern Kare Facilities/Kingdom Kare, LLC ("Northern Kare") sponsored a group health care benefit plan (the "ERISA plan"), and funded it with a bank account.[1] Northern Kare contracted with Defendants Intermediary Insurance Service Inc. ("Intermediary") and The MEGA Life and Health Insurance Company ("MEGA Life") to provide stop-loss insurance coverage. Stop-loss insurance protects the policyholder against excessive employee claims by reimbursing the policyholder for a portion of plan benefits that exceeds designated amounts.[2] Under this stop-loss policy, Intermediary and MEGA Life have no authority to approve or deny employee claims for health care benefits.

The policy declares, "Any and all reimbursements payable under the Policy will be made solely to the Policyholder [Northern Kare]."[3] And the policy expressly denies the existence of any right or legal relationship between the insurance companies and any person covered under Northern Kare's ERISA plan.[4]

The dispute underlying this litigation arose when Northern Kare sought reimbursement from Intermediary and MEGA Life for certain plan benefits paid by Northern Kare to its employees. Intermediary and MEGA Life refused to reimburse Northern Kare. Northern Kare then sued for breach of contract and unfair trade practice. Intermediary and MEGA Life moved to dismiss, arguing that Northern Kare's state law claims are preempted by ERISA and that Northern Kare has no standing to sue under M.G.L. chapter 93A, section 11.

### Discussion

In considering a Rule 12(b)(1) motion to dismiss, this court will "construe the Complaint liberally and treat all well-pleaded facts as true, according the plaintiff the benefit of all reasonable inferences."[5] A claim should be dismissed pursuant to Rule 12(b)(6) "only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."[6]

### A. *ERISA Preemption*

It is undisputed, at least for the purposes of this motion, that Northern

---

**1.** Compl. ¶ 13; Mem. of Law in Supp. of Mot. to Dismiss of Defs. at 2–3. Northern Kare paid Defendant Benefirst to provide third-party administrative services for the ERISA plan. Benefirst, however, is not a party to the present motion to dismiss.

**2.** BLACK'S LAW DICTIONARY 807 (7th ed.1999).

**3.** Compl. Ex. B (Accident and Sickness Excess Loss Insurance Policy) at 8.

**4.** *Id.*

**5.** *Murphy v. United States*, 45 F.3d 520, 522 (1st Cir.1995).

**6.** *Roeder v. Alpha Indus., Inc.*, 814 F.2d 22, 25 (1st Cir.1987) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)) (internal quotation marks omitted).

Kare sponsored and maintains a self-funded ERISA plan.[7] The Employee Retirement Income Security Act preempts state laws "insofar as they may now or hereafter *relate to* any employee benefit plan."[8] Accordingly, the question is whether Northern Kare's claims for breach of contract and unfair trade practice "relate to" Northern Kare's self-funded ERISA plan in such a way that those claims are preempted.

■■■ When applying ERISA's preemption provision, courts must start with the "presumption that Congress does not intend to supplant state law."[9] In addition, the First Circuit emphasizes the Supreme Court's "warning that, unless congressional intent to preempt clearly appears, ERISA will not be deemed to supplant state law in areas traditionally regulated by the states."[10] Courts must look to "the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive."[11] In conceiving ERISA, Congress sought to "protect ... the interests of participants in employee benefit plans and their beneficiaries ... by establishing standards of conduct, responsibility, and obligation *for fiduciaries of employee benefit plans*, and by providing for appropriate remedies."[12] Consequently, the fiduciary status of the Defendants is highly relevant to ERISA's preemptive scope.[13]

Intermediary and MEGA Life do not argue that they are ERISA fiduciaries, and the evidence strongly suggests that they are not. These insurance companies do not possess any powers or responsibilities that ordinarily confer fiduciary status.[14] Although they reserve the right to audit Northern Kare's books,[15] Intermediary and MEGA Life have no decision-making authority to approve or deny plan benefits claimed by Northern Kare's employees, to manage or dispose of plan assets, or to administer or amend the plan.[16]

7. Compl. ¶ 10; Pl.'s Mem. of Law in Supp. of its Opp'n to Defs. Mot. to Dismiss at 1; Mem. of Law in Supp. of Mot. to Dismiss of Defs. at 2–3. The parties also agree that the stop-loss insurance policy does not convert the self-funded plan into an "insured plan." Northern Kare's state law claims are not saved from preemption by 29 U.S.C. § 1144(b)(2)(A).

8. 29 U.S.C. § 1144(a) (emphasis added).

9. *Carpenters Local Union No. 26 v. United States Fid. & Guar. Co.*, 215 F.3d 136, 139 (quoting *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 654, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995)).

10. *Id.* at 139–40.

11. *Id.* at 140.

12. *Id.* (quoting 29 U.S.C. § 1001(b)) (emphasis added).

13. *See, e.g., Mortgage Lenders Network USA, Inc. v. CoreSource, Inc.*, 335 F.Supp.2d 313 (D.Conn.2004) (holding that defendant plan supervisor was not an ERISA fiduciary, and therefore, plaintiff's state claims were not preempted).

14. [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.
29 U.S.C. § 1002(21)(A).

15. *See* Compl. Ex. B at 8.

16. "[C]ourts have uniformly rejected a per se view of fiduciary status arising from the issuance of a policy alone." ERISA FIDUCIARY LAW

Intermediary and MEGA Life's obligations to Northern Kare as insurers, therefore, bear no relation to ERISA's fiduciary duties.

 Yet this does not end the inquiry. For the purposes of preemption, a state law "relates to" an employee benefit plan if it "[1] has a connection with or [2] a reference to such a plan." [17] Under the "connection with" heading, a state cause of action is preempted if it constitutes an "alternative enforcement mechanism" providing a remedy for the breach of fiduciary duties and other obligations created and enforced by ERISA.[18] State laws are also preempted if they "interfere with the administration of covered employee benefit plans, purport to regulate plan benefits, or impose additional reporting requirements." [19]

There is no suggestion that judicial enforcement of the stop-loss insurance contract will function as an "alternative enforcement mechanism" creating "a remedy for the violation of a right expressly guaranteed and exclusively enforced by the ERISA statute." [20] When seeking reimbursement, Northern Kare must provide Intermediary and MEGA Life with proof of loss.[21] But this contractual obligation does not "interfere with the administration of covered employee benefit plans, purport

to regulate plan benefits, or impose additional reporting requirements." [22]

 Under the "reference to" heading, state laws are preempted when they act "immediately and exclusively upon ERISA plans . . . or where the existence of ERISA plans is essential to the law's operation." [23] Northern Kare's claims, though, are based on generally applicable principles of traditional state contract law and the law of unfair trade practice. These laws function "irrespective of the existence or non-existence of an ERISA plan." [24] The mere fact that reference to the ERISA plan is necessary to determine liability under the stop-loss policy constitutes an "incidental relation" to the plan, insufficient to preempt state law.[25]

 Seeking to avoid this analysis, Intermediary and MEGA Life argue that the stop-loss insurance policy *itself* constitutes an ERISA plan and that Northern Kare's state law claims surely relate to *this* plan.[26] The stop-loss policy, however, was clearly not designed to be an "employee welfare benefit plan" as defined by ERISA.

An ERISA plan is a "plan, fund or program" established or maintained by an employer "for the purpose of providing" health care and other benefits for employ-

149 (Susan P. Serota & Frederick A. Brodie eds., 1995).

17. *Carpenters Local,* 215 F.3d at 140 (quoting *Cal. Div. of Labor Standards Enforcement v. Dillingham Constr.,* 519 U.S. 316, 324, 117 S.Ct. 832, 136 L.Ed.2d 791 (1997)) (alterations in original).

18. *Id.* at 140–41.

19. *Id.* at 141.

20. *Id.*

21. *See* Compl. ¶¶ 20–21.

22. *Carpenters Local,* 215 F.3d at 141.

23. *Id.* at 143 (quoting *Cal. Div. of Labor Standards Enforcement v. Dillingham Constr.,* 519 U.S. 316, 325, 117 S.Ct. 832, 136 L.Ed.2d 791 (1997)).

24. *Id.* at 144.

25. *Union Health Care, Inc. v. John Alden Life Ins. Co.,* 908 F.Supp. 429, 435 (S.D.Miss. 1995) (holding that employer's breach of contract claims against reinsures were not preempted by ERISA).

26. Mem. of Law in Supp. of Mot. to Dismiss of Defs. at 5–6.

ees and plan beneficiaries.[27] The purpose of the stop-loss insurance policy is to protect Northern Kare, not its employees, against excess financial loss.[28] The policy declares, "Any and all reimbursements payable under the Policy will be made solely to the Policyholder [Northern Kare]."[29] Intermediary and MEGA Life simply do not provide benefits of any kind to Northern Kare's employees. Indeed, the stop-loss policy expressly denies any right or legal relationship between the insurance companies and any person covered under Northern Kare's self-funded ERISA plan.[30] Given the language of the contract, it strains credulity for Intermediary and MEGA Life to argue that, by issuing the policy, they intended to establish an ERISA plan on behalf of Northern Kare's employees. Northern Kare's state law claims are not preempted by ERISA.

### B. *Unfair Trade Practice*

 Intermediary and MEGA Life also contend that Northern Kare, as a business entity, has "no standing to bring an action under M.G.L. Chapter 176D, Section 3(9), through M.G.L. Chapter 93A, § 11."[31] This is true but irrelevant because Northern Kare has alleged violations of M.G.L. chapter 93A, section 2.[32] Under M.G.L. chapter 93A, section 11, business organizations can sue for unfair or deceptive acts proscribed by section 2.[33] At this stage of the litigation, it does not appear "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."[34]

### Conclusion

For the foregoing reasons, the Motion to Dismiss of Defendants Intermediary Insurance Services and The MEGA Life and Health Insurance Company is DENIED.

AN ORDER WILL ISSUE.

27. 29 U.S.C. § 1002(1).

28. *See Strategic Outsourcing, Inc. v. Commerce Benefits Group Agency, Inc.*, 54 F.Supp.2d 566, 573 (W.D.N.C.1999) ("Reinsurance coverage does not provide insurance benefits for the plan participants but instead is in the nature of excess liability coverage for the employer and, as such, falls outside the scope of both the plan and ERISA.").

29. Compl. Ex. B at 8.

30. *Id.*

31. Mem. of Law in Supp. of Mot. to Dismiss of Defs. at 13.

32. Compl. ¶¶ 44, 46.

33. *See St. Paul Vill. Condo. Ass'n v. St. Paul Fire & Marine Ins. Co.*, No. Civ. A. 93–2546, 1996 WL 384249, at *6 (Mass.Super. July 2, 1996) (noting that "even in a commercial dispute between business organizations, a violation of c. 176D that rises to a level so as to constitute an unfair or deceptive act for purposes of c. 93A, § 2, would seem to support an independent claim for violation of c. 93A, § 11"); *see also M. DeMatteo Const. Co. v. Century Indem. Co.*, 182 F.Supp.2d 146, 161 (D.Mass.2001) (explaining that business entities "can sue only under section 11 of chapter 93A for a violation of section 2 of that chapter, and not under either section 9 or section 11 of that chapter for a violation of chapter 176D").

34. *Roeder v. Alpha Indus., Inc.*, 814 F.2d 22, 25 (1st Cir.1987) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)) (internal quotations marks omitted).