**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**October 18, 2006**

Charles R. Fulbruge III
Clerk

**REVISED OCTOBER 24, 2006**
**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

———————

No. 04-30986

———————

BANK OF LOUISIANA,

Plaintiff - Appellant,

versus

AETNA US HEALTHCARE INC; AETNA LIFE INSURANCE
COMPANY,

Defendants - Appellees.

Appeal from the United States District Court
For the Eastern District of Louisiana

Before REAVLEY, GARZA, and BENAVIDES, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

In response to the Petition for Rehearing filed by defendants Aetna US Healthcare Inc. and

Aetna Life Insurance Company, and having duly considered the response and the reply, we withdraw

the prior panel opinion, 459 F.3d 610, in its entirety and substitute the following:

The Bank of Louisiana ("the Bank") appeals a summary judgment for the defendants Aetna

US Healthcare Inc. and Aetna Life Insurance Company (collectively "Aetna"). The issue on appeal

is whether the Bank's state law claims of detrimental reliance, breach of contract, and misrepresentation are preempted by the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq. ("ERISA").

I

In 1995, the Bank entered into two contracts with Aetna. First, the Bank entered into an administrative services contract ("ASC") with Aetna to administer the Bank's self-insured employee benefit plan ("the Plan").[1] Second, the Bank purchased from Aetna a stop-loss insurance policy for the Plan.[2] The stop-loss policy provided an "individual" or "specific stop-loss amount" of $50,000 and an "aggregate stop-loss amount" of $600,000.[3] The stop-loss coverage was scheduled to

---

[1] The parties do not dispute that this qualifies as an ERISA plan. *See* 29 U.S.C. § 1002(1) (defining employee welfare benefit plans subject to ERISA).

[2] On appeal, Aetna, for the first time, seeks to distinguish among the various Aetna entities involved in this dispute. Specifically, Aetna asserts that Aetna Life Insurance Company, which operates under the registered trade name "Aetna U.S. Healthcare," is the party whom the Bank contracted to administer the Plan; that Aetna Casualty Company, now known as Aetna Insurance Company of Connecticut) ) which is not a party to this suit) ) is the party who issued the stop-loss insurance policy for the Plan; and that Aetna U.S. Healthcare, Inc., although named by the Bank as a defendant in this suit, is a separate foreign corporation that has no connection to the Plan. Therefore, Aetna argues, at issue in this case are only claims by an ERISA employer against an ERISA plan administrator.

Aetna did not raise this argument in the district court. To the contrary, Aetna repeatedly represented in its pleadings that the Bank entered into the ASC with "Aetna" and that "Aetna" issued the Policy to the Bank. (R. 5, 657, 847, 926-27, 944, 1116-17, 1494-95, 1502.) Accordingly, we do not reach Aetna's new contention that it is not the stop-loss insurer. *See Theriot v. Parish of Jefferson*, 185 F.3d 477, 491 n.26 (5th Cir. 1999) ("An appellate court . . . may not consider facts which were not before the district court at the time of the challenged ruling.").

[3] The distinction between an individual or specific stop-loss amount and the aggregate stop-loss amount is described in Troy Paredes, Note, *Stop-Loss Insurance, State Regulation, and ERISA: Defining the Scope of Federal Preemption*, 34 HARV. J. LEGIS. 233, 249 (1997), as follows:

> There are two types of stop-loss insurance. Specific stop-loss insurance covers a plan against the risk that a particular participant's claims will exceed some specified level. For example, if the insurance kicks in when an individual's claims exceed $20,000 per year and a participant has bona fide claims of $30,000, the plan's stop-loss insurer covers $10,000 of the person's claims. Alternatively, aggregate stop-loss insurance covers a plan against the risk that the sum of all of its participants' claims will exceed some specified level. For example, if the insurance kicks in when aggregate claims exceed $2 million per year and claims under the plan total $2.5 million, the stop-loss insurer covers $500,000 of the claims.

terminate on December 31, 2000.

The Bank, however, reached the aggregate stop-loss amount in 2000. Late in that year, the parties met to form a new contract that would provide fully-insured coverage commencing on January 1, 2001. The Bank also purchased an extension on its stop-loss coverage that would apply to claims incurred in 2000 and for which benefits would be paid during the first three months of 2001. In a letter from account representative Stacy McMahon, Aetna stated that the stop-loss extension would mean that the Bank would "have no additional claim liabilities for 2000 and no additional fund transfers [would] be requested." McMahon further stated that Aetna would "start wiring [the Bank's] account for claims paid during the runoff period and [the Bank would] be reimbursed at year-end." During the three month run-off period, the Bank submitted $271,628.38 in net claims incurred by plan members in 2000. (R. 177, 181, 218, 243.) Aetna drafted the Bank's account for these claims over the course of 2001 and 2002. Five of these drafts occurred during the three-month stop-loss extension period, totaling $102,720.06. Nevertheless, Aetna declined to reimburse the Bank.

The Bank filed a complaint alleging that Aetna had negligently or fraudulently misrepresented that, pursuant to the stop-loss extension, Aetna would reimburse the Bank for the $271,628.38 that it drafted from the Bank's account. In particular, the Bank first claimed that Aetna "misrepresented the value and benefit of its payment" to Aetna for the extension to the stop-loss policy. Second, the Bank alleged that Aetna misrepresented the scope of the stop-loss extension and that the Bank had detrimentally relied on these representations. Third, the Bank alleged that Aetna breached "express and implied contracts," including a contract to reimburse the Bank for claims that were paid or should

_See also_ Dennis K. Schaeffer, Comment, _Insuring the Protection of ERISA Plan Participants: ERISA Preemption and the Government's Duty to Regulate Self-Insured Health Plans_, 47 BUFF. L. REV. 1085, 1108-09 (1999) (discussing difference).

3

have been paid during the three-month extension period. Fourth, the Bank alleged that Aetna breached its fiduciary duties as plan administrator by administering the Plan "in such a fashion as to delay the processing of claims" in order to remove them from coverage under the stop-loss extension. Finally, in an amended complaint, the Bank alleged that Aetna had violated Louisiana Revised Statutes 22:658[4] and 22:1220.[5]

Aetna moved for summary judgment on the ground that the Bank's claims were preempted by ERISA. In a series of briefs, Aetna argued that ERISA preempted claims between an employer and a plan administrator. (R. 930.) The Bank responded that its claim of detrimental reliance and a claim for attorney's fees under Louisiana Revised Statute 22:657, the latter of which it had not pled,[6] were not preempted because they exclusively involved parties providing services to an ERISA plan in a non-fiduciary capacity. (R. 635, 882.) The Bank withdrew its breach of fiduciary duty claim[7] and abandoned its claims under Louisiana Revised Statute 22:658 & 22:1220. The district court held that ERISA preempted all of the Bank's remaining claims and granted summary judgment

---

[4] Louisiana Revised Statute 22:658 requires insurers issuing certain types of policies to pay the amount of claims due within thirty days of proof of the loss.

[5] Louisiana Revised Statute 22:1220 imposes upon insurers a duty of good faith and fair dealing.

[6] Louisiana Revised Statute 22:657 provides that claim arising under the terms of health and accident contracts must be paid within thirty days of the date that the insurer receives written notice and proof of the claim. Failure to comply renders the insurer liable for penalties and attorney's fees. Aetna does not argue that the Bank's failure to properly plead this claim warrants affirmance.

[7] *See* District Court's Order and Reasons at 2 n.1 (July 9, 2003) (noting that the Bank had "indicated its intention to withdraw the breach of fiduciary duty claim"); Bank of Louisiana's Memorandum Regarding ERISA Preemption at 3 n.2 (Apr. 23, 2003) ("[W]e concede that BOL's Count Four, claiming breach of fiduciary duty, may be preempted by ERISA. Because the Count adds nothing to the gravamen of BOL's complaint, we will withdraw that Count without prejudice.").
Because the Bank has withdrawn its claim that Aetna delayed paying health care benefits, and a default to perform the stop-loss policy is not covered by the statute, the Bank's claim for attorney's fees under Louisiana Revised Statute 22:657 fails.

for Aetna.

II

In reviewing a summary judgment, we apply the same standard as the district court.  *Martin v. Alamo Community Coll. Dist*., 353 F.3d 409, 412 (5th Cir. 2003).  We affirm only if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.  *Id.*  For a defendant to obtain summary judgment on an affirmative defense, it must establish beyond dispute all of the defense's  essential elements.  *Id.*  We review the district court's legal determination that ERISA preempts a state law claim *de novo*.  *Bullock v. Equitable Life Assurance Soc'y of the United States*, 259 F.3d 395, 399 (5th Cir. 2001).

ERISA's preemption clause, 29 U.S.C. § 1144(a), states that with certain exceptions, ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . ."  The Supreme Court has "observed repeatedly that this broadly worded provision is 'clearly expansive.' " *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 146 (2001) (quoting *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995)).  The Court has held that a state law "relates to an ERISA plan 'if it has a connection with or reference to such a plan.' " *Id.* at 147 (quoting *Shaw v. Delta Air Lines, Inc*., 463 U.S. 85, 97 (1983)).  Simultaneously, however, the Court recognizes that, given its broadest reading, the phrase "relate to" would encompass virtually all state law, and that its "connection with" and "reference to" interpretations are "scarcely more restrictive." *Id.* at 146-47.  The Court has, therefore, declined to apply an "uncritical literalism" to the phrase and instead takes the "the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive, as well as

5

to the nature of the effect of the state law on ERISA plans." *Id.* at 147 (internal quotation marks omitted).

> Congress's objectives in enacting ERISA were to
>
> protect interstate commerce and the interests of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing appropriate remedies, sanctions, and ready access to the Federal courts.

29 U.S.C. § 1001(b). To this end, ERISA's preemption provision is intended "to establish a uniform administrative scheme, which provides a set of standard procedures to guide processing of claims and disbursement of benefits." *Egelhoff*, 532 U.S. at 148 (quoting *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 9 (1987)). A uniform administrative scheme serves to minimize administrative and financial burdens by avoiding the need to tailor plans to the peculiarities of the law of each state. *Ingersoll-Rand Co. v. McClendon,* 498 U.S 133, 142 (1990).

In light of these statutory objectives, this court applies a two-prong test to the defense of ERISA preemption. A defendant pleading preemption must prove that: (1) the claim "addresses an area of exclusive federal concern, such as the right to receive benefits under the terms of the Plan; and (2) the claim directly affects the relationship among traditional ERISA entities) ) the employer, the plan and its fiduciaries, and the participants and beneficiaries." *Mayeaux v. La. Health Serv. and Indem. Co.*, 376 F.3d 420, 432 (5th Cir. 2004). Because ERISA preemption is an affirmative defense, Aetna bears the burden of proof on both elements. *See Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987) (ERISA preemption is a defense); *Settles v. Golden Rule Ins. Co.*, 927 F.2d 505, 508 (10th Cir. 1991) (defendant bears burden of proving ERISA preemption); *Kanne v. Conn. Gen. Life Ins. Co.*, 867 F.2d 489, 492 n.4 (9th Cir. 1988) (same).

Aetna argues that the Bank's claims require inquiry into the administration of the Plan))an area of exclusive federal concern))because some of the drafts on the Bank's account were for benefit claims paid after the stop-loss extension expired. Aetna contends that the Bank intends to prove that these drafts nonetheless fall within the stop-loss extension because they arise from benefit claims that Aetna improperly delayed processing. To the extent that the Bank intends to prove its breach of contract claim through evidence that Aetna improperly delayed processing and paying benefit claims, Aetna is correct that it would require inquiry into an area of exclusive federal concern. *See Hollis v. Provident Life and Accident Ins. Co.*, 259 F.3d 410, 414 (5th Cir. 2001) (right to receive benefits under an ERISA plan is an area of exclusive federal concern); *Hubbard v. Blue Cross & Blue Shield Ass'n,* 42 F.3d 942, 946 (5th Cir. 1995) (claim that would require inquiry into how benefit claims were processed implicates area of federal concern).

The Bank has asserted, however, several other claims that do not require inquiry into Aetna's processing of benefit claims or administration of the Plan. For example, to the extent the Bank's breach of contract claim is premised on Aetna's failure to reimburse it for amounts actually paid during the three-month extension period, the claim does not depend on proof that Aetna improperly delayed paying and processing benefit claims. Likewise, the Bank has asserted detrimental reliance and misrepresentation claims based on Aetna's conduct in negotiating the stop-loss extension with the Bank. These claims do not challenge any act or omission by Aetna in processing benefit claims or administering the Plan; rather, they call into question Aetna's representations about the scope of the stop-loss extension. The Bank need not prove that Aetna improperly administered the Plan in

7

order to prevail on any of these claims.[8]  Accordingly, Aetna has established the first element of the

defense of preemption as a matter of law only on the Bank's claim that Aetna breached the stop-loss

extension by failing to reimburse the Bank for amounts the Bank contends should have been, but were

not, paid during the three-month extension period, *i.e.*, by delaying the processing and paying of

claims for benefits.[9]

Aetna argues that the second element of its defense is satisfied as a matter of law because the

parties are two traditional ERISA entities))an employer and a plan administrator.  The Bank

contends, however, that Aetna was acting in its capacity as a vendor of insurance, not as a fiduciary

of the Plan.  For purposes of ERISA preemption the critical distinction is not whether the parties to

a claim are traditional ERISA entities in some capacity, but instead whether the relevant state law

affects an aspect of the relationship that is comprehensively regulated by ERISA.  As we have noted,

ERISA may preempt some claims between traditional ERISA entities but not others.[10]  And a party

may qualify as an ERISA fiduciary with regard to some claims but not others.  *See Pegram v.*

---

[8]  Aetna argues that the Bank cannot prevail on these theories for a variety of reasons, but the Bank's likelihood of success on the merits has no bearing on whether the claims are preempted by ERISA, which is the sole issue before this Court.

[9] Although the district court concluded that the claims implicate an area of exclusive federal concern because they "all pertain to the terms of an ERISA-governed plan and will require the examination of the plan terms," there is nothing in the summary judgment record to support that conclusion.  Neither Aetna nor the district court identified what portion of the Plan or ASC is in dispute.  *Cf. Perkins v. Time Ins. Co.*, 898 F.2d 470, 473 (5th Cir. 1990) (claim for fraud and misrepresentation in the procurement of an ERISA plan are not preempted).

[10] *See Hobson v. Robinson*, 75 Fed.Appx. 949, 955 (5th Cir. 2003) (unpublished) (party may be a fiduciary with regard to some claims but not others); *Smith v. Tex. Children's Hosp.*, 84 F.3d 152 (5th Cir. 1996) (fraudulent inducement claim against employer not preempted while breach of contract claim was preempted); *Hook v. Morrison Milling Co.*, 38 F.3d 776, 783 (5th Cir. 1994) (ERISA does not preempt all state law claims between an employee and an employer, merely because the employer administers an ERISA plan to which the employee belongs); *Sommers Drug Stores Co. v. Employee Profit Sharing Trust*, 793 F.2d 1456 (5th Cir. 1986) (claim for common law breach of corporate fiduciary duty was not preempted by ERISA, even though the defendant/corporate director was an ERISA plan fiduciary and the plaintiffs/employees were plan beneficiaries).

*Herdrich*, 530 U.S. 211, 225-26 (2000) (ERISA defines party as fiduciary "only 'to the extent' that he acts in such a capacity in relation to a plan") (quoting 29 U.S.C. § 1002(21)(A)). "[T]he critical determination [is] whether the claim itself created a relationship between the plaintiff and defendant that is so intertwined with an ERISA plan that it cannot be separated." *Hobson*, 75 Fed.Appx. at 954.

Aetna argues that it is an ERISA fiduciary because the Bank has delegated to it the discretionary responsibility to administer the Plan.[11] The Bank correctly contends, however, that Aetna was not acting in a fiduciary capacity when it negotiated the stop-loss extension, represented to the Bank which claims would be covered by the stop-loss extension, and performed its duties under the stop-loss extension. Aetna identifies no cases holding that a stop-loss insurer is necessarily a plan fiduciary.[12] The benefits of stop-loss insurance inure solely to the Bank, and Aetna cites no evidence that the stop-loss policy is a plan asset or was purchased with plan assets. *Cf.* DEPARTMENT OF LABOR ADVISORY OPINION 92-02A, *available at* 1992 WL 15175 (stop-loss policy is not a plan asset). *But cf. Patelco Credit Union v. Sahni*, 262 F.3d 897, 908 (9th Cir. 2001) (checks for stop-

---

[11] A party acts in a fiduciary capacity when he: 1) exercises discretionary control over plan assets; 2) he renders investment advice for a fee to the plan; or 3) he has discretionary responsibility with regard to plan administration. 29 U.S.C. § 1002(21)(A); *see also Tri-State Mach., Inc. v. Nationwide Life Ins. Co.,* 33 F.3d 309, 313-14 (4th Cir. 1994) (claims by employer against plan administrator and stop-loss insurer for delaying the processing of claims are preempted); *Iron Workers Mid-South Pension Fund v. Terotechnology Corp.*, 891 F.2d 548, 553 (5th Cir. 1990) ("the state law is preempted by section 514(a) if the conduct sought to be regulated by the state law is 'part of the administration of an employee benefit plan' " (quoting *Martori Bros. Distrib. v. James-Massengale*, 781 F.2d 1349, 1358 (9th Cir. 1986))).

[12] The majority of cases are to the contrary. For example, the Ninth Circuit held in *Geweke Ford v. St. Joseph's Omni Preferred Care Inc.*, 130 F.3d 1355 (9th Cir. 1997), that a plan's relationship to its stop-loss insurer is like that between any commercial entities and is not regulated by ERISA. *See also Seneca Beverage Corp. v. HealthNow N.Y., Inc.*, 383 F.Supp.2d 413, 423 (W.D.N.Y. 2005) (stop-loss insurer is not a fiduciary); *Northern Kare Facilities/Kingdom Kare, LLC v. Benefirst LLC*, 344 F.Supp.2d 283, 287 (D.Mass. 2004) (same); *Deeter v. Greene, Tween and Co., Inc.*, CIV. A. 98-1222, 1998 WL 639190 (E.D. Pa. Sept. 18, 1998) (same); *Union Health Care, Inc. v. John Alden Life Ins. Co.*, 908 F. Supp. 429, 432-36 (S.D. Miss. 1995) (same). The reasoning of these courts is persuasive and consistent with our own.

loss benefits are plan assets). Nor does Aetna identify any cases holding that a plan administrator who also brokers or negotiates a stop-loss insurance policy does so in its capacity as a fiduciary. The only claim to implicate Aetna's fiduciary relationship with the Bank is the Bank's claim that Aetna breached the stop-loss extension by failing to reimburse the Bank for claims that Aetna delayed processing and paying and, hence, that were not paid during the extension period. Accordingly, Aetna has established the second element of its preemption defense only as to this latter claim.[13]

## III

For the foregoing reasons, we reverse the district court's grant of summary judgment on the Bank's claims of detrimental reliance and misrepresentation, as well as the Bank's breach of contract claim based on Aetna's failure to reimburse the Bank for benefit claims that were actually paid during the extension period; affirm the grant of summary judgment on the Bank's breach of contract claim based on Aetna's failure to reimburse the Bank for benefit claims that were not paid during the

---

[13] Aetna relies on *Tri-State Machine, Inc. v. Nationwide Life Insurance Co.*, 33 F.3d 309 (4th Cir. 1994), but that case is not to the contrary. Tri-State Machine, an employer, sued Nationwide Life Insurance, the administrator and stop-loss insurer for its ERISA plan. Tri-State alleged that Nationwide Life "delayed processing claims in years when the stop-loss limit had been reached in order to deflect them into a new policy year to be charged against Tri-State under its self-funding obligations." *Id.* at 314. The Fourth Circuit held that such an allegation was essentially a challenge to a plan administrator's processing of claims and therefore related to the plan. *Id.* Likewise, the Bank's breach of contract claim, to the extent it is premised on Aetna's alleged delaying the processing of claims, is preempted. The wrong for which the Bank seeks to recover in its remaining claims, however, is Aetna's conduct in negotiating and performing under the stop-loss extension. Such claims do not concern the processing of claims for benefits and are not preempted.

The Fourth Circuit's cases are consistent with our reasoning that the parties are not fiduciaries with respect to the Bank's surviving claims. In *Phelps v. C.T. Enterprises, Inc*., 394 F.3d 213, 219 (4th Cir. 2005), the court "emphasized that fiduciary duty under ERISA is not an all-or-nothing concept." *See also Cotton v. Mass. Mutual Life Ins. Co*., 402 F.3d 1267, 1277 (11th Cir. 2005) (fiduciary status under ERISA not an "all-or-nothing concept").

*Broadnax Mills, Inc. v. Blue Cross and Blue Shield of Virginia*, 867 F.Supp. 398 (E.D. Va. 1994), is also distinguishable. The employer in *Broadnax Mills* sued the plan administrator and stop-loss insurer on the ground that it negligently failed to advise it to obtain an aggregate stop-loss policy and breached the Plan's Administrative Service Agreement. In *Broadnax Mills,* it was conceded that the stop-loss insurance was purchased by funds contributed by plan participants and therefore concerned the disposal of plan assets. *See id.* at 403. Aetna points to no similar concession in this case. The plaintiff in *Broadnax Mills* also alleged that the plan administrator breached its duty to disclose and report the financial status of the plan. *Id.* at 403-04. The Bank's claims do not involve similar allegations.

10

extension period and the Banks's Louisiana Revised Statute 22:657 claim; and remand for proceedings not inconsistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.